IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VD, by and through his Parent and Natural Guardian, JD, <br><br> Plaintiffs, <br><br> vs <br><br> PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, <br> Defendant. | NO. _____ <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff VD ("VD"), by and through his parent and natural guardian, JD.., for his Complaint against Defendant Pennsylvania Interscholastic Athletic Association ("PIAA"), states and alleges as follows:

### I.    SUMMARY OF THE CASE

1.    This is an action for injunctive relief, declaratory relief, and money damages arising out of the injury, loss of property interest, and damage sustained by VD as a result of the unconstitutional actions by the Pennsylvania Interscholastic Athletic Association ("PIAA"). Plaintiff seeks relief from the PIAA's improper two game suspension of VD, a student, from playing in the varsity football games for Carbondale Area High School ("CA") on September 2, 2022, and September 9, 2022. Plaintiff served a one game of the suspension on September 2, 2022. Under Pennsylvania law,

interscholastic sports participation is a constitutionally protected property right included as part of a student's right to an education, which cannot be taken away without due process. Due to the PIAA's lack of an appropriate appeals process for review of unsportsmanlike conduct penalty calls leading to ejection and subsequent automatic two game suspension, SB was denied a constitutionally protected property right without due process.

2.    VD is the starting tailback, linebacker, kick returner for the Carbondale Area Football Team. On August 26, 2022, Carbondale Area played in its first regular season game. During the course of the game, PIAA Officials issued offsetting personal penalties against VD and a player on the Greater Nanticoke Area football team. While VD was ejected from the game, Coach Jeff Arthur of Carbondale Area was adamant, based on his investigation of the play and consult with VD, that no punch was thrown which was the call made on the play against VD.  However, due to alleged personal foul, i.e., a punch allegedly, per the referee, knocked the opposing players helmet off. Because of this unsportsmanlike penalty, VD is barred from playing in two games during his senior season without due process. VD seeks an impartial review of the call that led to his ejection from the August 26, 2022, game and review of his subsequent immediate suspension from the September 2, 2022 game and the upcoming September 9, 2022 game.

2

There has been and can be no meaningful review of the call and subsequent suspension prior to the upcoming September 9, 2022, game and therefore VD seeks to enjoy and realize his property right in participation in interscholastic athletics and participate in the September 9, 2022, game.

3.    VD brings this action for money damages, but also for the express purpose of gaining the immediate ability to participate in varsity football at Carbondale Area for the upcoming September 9, 2022 game because there has been and can be no meaningful review of the call in question or subsequent two game suspension, one game suspension having been served,  prior the next scheduled game on September 9, 2022. VD seeks: (a) to obtain a temporary restraining order preventing the PIAA from suspending VD from the next scheduled game on September 9, 2022 without due process; (b) to obtain additional injunctive relief permanently enjoining the PIAA from suspending VD from participating in varsity athletics and thereby allowing VD to participate in varsity football absent a meaningful review of the call in question and his suspension by a neutral; and (c) to obtain a declaration that suspending VD without any meaningful appeals process was and is unconstitutional and violates VD's constitutionally protected rights.

## II.    JURISDICTION

4.    Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourteenth Amendment of the United States Constitution, and 28 U.S.C. §§ 1331 and 1343. This Court has original jurisdiction over Count One of VD's Complaint.

5.    Venue in this District is authorized by 28 U.S.C. § 1391(b) due to the fact that the PIAA conducts business or resides in this District and because this District is where a substantial part of the events or omissions giving rise to the claims occurred.

### III.    PARTIES

6.    VD is a student who resides with his single parent mother, JD, within the boundary of the Carbondale Area School District. VD and JD are citizens of the United States and residents of the State of Pennsylvania.

7.    Defendant Pennsylvania Interscholastic Athletic Association ("PIAA") is a domestic non-profit corporation formed under the laws of the Commonwealth of Pennsylvania and has a registered Office Address of  550 Gettysburg Road, Mechanicsburg, PA  17055-0708. FACTUAL ALLEGATIONS

8.    VD is a twelfth-grade student who lives with his mother JD. VD is currently enrolled at the Carbondale Area High School.

9.    VD has been raised by a loving single parent mother as his father

4

died from cancer in April 2021.

10. VD is a highly talented, star football player for the Carbondale Area Football Team.

**A.    VD's Participation on August 26, 2022, Football Game.**

11. On August 26, 2022, VD participated in Carbondale Area's first football game of 2022 season.

12. Given VD's success the previous season, during 2021 season, opposing teams focus their verbal and physical attention on VD. During the August 26, 2022 game, VD had a similar experience.

13. VD is the focus of considerable interest by college coaches and the improper suspension at issue may jeopardize his right to further his education through an athletic scholarship.

14. During the August 26, 2022 game, the PIAA Officials issued two personal foul conduct penalties against VD and a player from Greater Nanticoke. This call occurred with 5:11 minutes remining in the game's first quarter.

15. VD vehemently disagrees with the on field personal fouls conduct call provided to Coach Jeff Arthur on field by the Referee.

16. Coach Arthur spoke with VD and was assured, in strong terms, by VD that no conduct occurred.

17. Coach Arthur, on the playing field, inquired of the officiating crew what the basis of the call was and what was going on with the call.

18. Coach Arthur saw the officials speaking with the opposing coach and repeatedly asked if someone would tell him the basis of the call.

19. The Head Referee came over to Coach Arthur and advised "they both are ejected."

20. Coach Artur inquired what VD allegedly did to justify the ejection and was informed by the Referee that "number 18 (VD) threw a punch" that "knocked the kids helmet off."

21. Coach Arthur pressed the Referee if he saw VD throw a punch and was informed by the Referee that he did not see any punch thrown by VD. He indicated a different official, the umpire, saw that punch by VD and he was being ejected.

22. The penalties were announced publicly and at this time, Coach Arthur asked his video staff, if the pay was on the video. He was advised that the video was directed toward a separate portion of the field and no video at Carbondale Area documented the event.

23. Coach Arthur that focused his attention on the Umpire and specifically asked the Umpire if he saw a punch thrown by VD and the Umpire answered Coach Arthur affirmatively indicating "Number 18 (VD)

6

threw the punch that knocked his helmet off."

24. At the conclusion of the game, Coach Arthur walked across the field to congratulate the Greater Nanticoke Football Coach for winning the game and specifically asked him what the officials informed him about the play that resulted in VD's ejection.

25. Coach Bruza from Greater Nanticoke told Coach Arthur that the officials told him his player took his own helmet off and went after the Carbondale Area player (VD) and that the Carbondale Area player (VD) punched his player.

26. Coach Arthur was perplexed as the different version provided by the officiating crew and told the coach for Greater Nanticoke that he was informed that the Carbondale Area player's (VD) punch knocked the helmet off his player. Coach Arthur was assured by the Greater Nanticoke Coach this was not what he had been informed by the officials.

27. Coach Arthur requested that if the film of the game from Greater Nanticoke showed the play at issue, to please forward same to Coach Arthur.

28. Later that evening, the Coach of Greater Nanticoke called Coach Arthur from Carbondale Area to inform him that the Greater Nanticoke game film showed the pay at issue and confirmed that VD never threw a punch.

29. Coach Arthur secured the Greater Nanticoke game film and as a

PIAA football official and head coach, he felt obligated to contact the Carbondale Athletic Director to inform him that no punch was thrown by VD and to institute the appeal process with PIAA.

30.    At no time was VD ever interviewed o questioned by the PIAA and more importantly was never able to confront his accusers and examine them as to the alleged punch and suspension.

31.    Coach Arthur than contacted the rules interpreter of the Roy Davis Scranton Chapter of Football Officials. The rules interpreter agreed to review the film with Coach Arthur.

32.    The rules interpreter, following game film review, instantly concluded no punch was thrown by VD and no ejection should have occurred.

33.    On information and belief, the rules interpreter forwarded a video of the play to the game referee and umpire for review.

34.    The Referee filled out an ejection report over the weekend, consistent with PIAA rules, indicating the cause of the ejection of VD was due to his involvement in "shoving and chest bumping incident during which he (VD) attempted to strike the opposing player."

35.    No reference to VD throwing a punch, as repeatedly reported by the Referee to Coach Arthur during the game, is even referenced in the

ejection report.

36.    In addition, the shoving and chest bumping did take place, but it was during live ball on a play in the game.

37.    PIAA Assistant Director ruled on the appeal of the suspension ruling and upheld the two-day suspension mandated by PIAA rules.

38.    The PIAA Assistant Director indicated that Coach Arthur could have called a time out to challenge the ruling under National Federation of High School Sports Football Rule 3-5-11.

39.    Coach Arthur could not challenge at the time of the incident as the information he was provide on field by the PIAA officials that a punch was thrown by his player (VD) warranted an ejection under the rules.

40.    As no punch was thrown by his player (VD), Coach Arthur could not have challenged an incorrect ruling and application by the officials on the information and reasoning provided.

41.    As the video of the alleged penalties reveals, VD threw no punch.

42.    The ejecting official, the field umpire, who Coach Arthur was informed was the official who saw the alleged punch by VD, has never filled out any report or forms about the incident which is directly contrary to PIAA rules and procedures on the Disqualification form.

43.    VD has to the present day never seen any reports or forms

9

executed by the ejecting official, i.e., the filed umpire.

**B.    VD Seeks to Appeal His Suspension And Submits it Should be a One Game Suspension**

44.    VD disagrees with the PIAA Officials' personal foul penalty conduct call issued to him during the August 26, 2022 football game and wishes to appeal this penalty and subsequent two game suspension.

45.    PIAA By-Law XIII, Section 8 sets forth the rules regarding disqualification from next contest(s) as follows:

> General Rule. Preamble Sportsmanship is a core principle in interscholastic athletics. Actions which are unethical and/or intended to demean, embarrass, intimidate or injure opposing contestants, Teams, spectators and/or officials are considered unsportsmanlike and will not be tolerated since they are contrary to the purposes of PIAA and convey lessons incompatible with the reasons why high school sports exist.   A. Mandatory Disqualification. One Game Suspension.   Any Coach and/or contestant who, while Coaching or competing for a PIAA member school, is ejected from a Contest by a state high school association recognized and/or registered official in that sport for unsportsmanlike conduct or flagrant misconduct

is disqualified from Coaching and/or participating for the remainder of the day and in all Contests on the next Contest day of the same level (varsity, junior varsity, or otherwise) of competition from which the Coach and/or contestant was previously disqualified.   For a Coach, participation in the next Contest includes any contact by the Coach with members of the Team, including other Coaches, between the time that the Team arrives at the Contest site and the conclusion of the last Contest of the day. The Principal must direct the Coach not to attend all of the Contest(s).

B. Supplemental Disqualification. Two Game Suspension. Any Coach, team personnel and/or contestant who, is ejected from a Contest by a state high school association recognized and/or registered official and a component of the ejection is any of the following actions: confronting an official, coach, or contestant; physically contacting an official, coach, or contestant; directing foul or vulgar language/gestures toward an official, coach, contestant or

spectator(s); using ethnic or racially insensitive comments: will be disqualified from coaching and/or participating for the remainder of the day and for the next two (2) Contests including all Contests on the next two (2) Contest days of the same level (varsity, junior varsity, or otherwise) of competition from which the Coach, team personnel and/or contestant was previously disqualified. For the purposes of this provision, the jurisdiction of the official(s) to apply and enforce this rule begins upon the official's arrival at the Contest site and ends when the official (or the last of the team of officials) leaves the Contest site. The Contest site is defined as premises on which the competition surface is located and includes the entirety of the premises and parking areas. When the Supplemental Disqualification implicates a contestant, and in addition to the two (2) Contests disqualification, the contestant may not return to competition representing the contestant's school until the contestant completes the NFHS Sportsmanship program at NFHS Learn (online) and provides a certification of completion of this program

to the student's Principal and the Principal submits the certification to the PIAA District Sport Chairman. A Coach and/or Team personnel disqualified under this provision may not return to competition representing the Coach's/Team personnel's school until the Coach/Team personnel complete the NFHS Sportsmanship program and Teaching and Modeling Behavior program at NFHS Learn (online) and provides a certification of completion of these two programs to the Coach's/Team personnel's Principal and the Principal submits the certification to the PIAA District Sport Chairman. A disqualification under this provision supersedes a disqualification under A. above. A PIAA District Committee may, at its discretion, convene a hearing to address any and all disqualifications and may provide additional penalties as warranted by the circumstances.

C. Discretionary Disqualification. Upon the finding by a PIAA-Appointed Tournament Director, Contest Manager, District Committee, Regional Panel, or, if the conduct

occurred in an Inter-District Contest, by the Executive Director or Board of Directors, within their respective jurisdictions, that a student athlete, Coach, and/or Team, while Coaching or competing for a PIAA member school, engaged in flagrant misconduct or unsportsmanlike conduct/behavior before, during or after the Contest including the medal/award ceremony and while on the premises where a Contest is conducted, said student-athletes, Coaches, and/or Teams may be disqualified from participation in the next scheduled Contest following said determination or any other penalties as determined under ARTICLE XIII.

(See Declaration of Attorney Coleman, Exhibit "A")

46.    Despite the Bylaw above quoted, the PIAA has declared that VD must serve a two-game suspension despite VD not engaging in any fighting as alleged or conduct that would warrant a two game suspension.

47.    VD seeks a meaningful review of the call and subsequent two game suspension by a neutral decisionmaker. Given the timing and impact of the Labor Day holiday, there is no opportunity for a meaningful review prior to Friday's game and therefore VD seeks to continue to play varsity football

14

for Carbondale Area during his senior season until his appeal can be properly reviewed.

48.    The PIAA's decision to issue a personal foul conduct penalty and suspend VD from the upcoming game was willful, unreasoned, and without consideration of the facts and circumstances present in VD's situation.

49.    VD has no means of recourse for the PIAA's decision to prohibit VD from playing in the seasons game. VD seeks due process to challenge the PIAA's unconstitutional actions, so that he may appeal his personal foul conduct penalty and subsequent two game suspension and continue to participate in interscholastic sports until he is afforded his constitutional due process rights.

50.    The PIAA Board of Control in enacting Article XIII, Section 8 B has doubled the penalty for egregious game violations, suspending players for two games rather than one if they are ejected for excessive physical contact.

51.    The increased penalty has been criticized because it unfairly punishes football more harshly. A two-game suspension in football represents 20% of a ten game regular season, but only 9% of a 22 game basketball schedule.

**IV.    CAUSES OF ACTION**

15

## Count One
## 42 U.S.C. § 1983 – Fourteenth Amendment Due Process Violations

52.    Plaintiffs incorporate and reallege the allegations contained in all other Paragraphs of this Complaint as though fully set forth in this Count.

53.    Education is a fundamental right in which individuals have a property interest. This property interest is protected by the Fourteenth Amendment to the United States Constitution and Article XIII of the Minnesota Constitution.

54.    The fundamental right and property interest in education extends to participation in interscholastic athletics.

55.    The actions of the PIAA in barring and suspending VD from varsity athletics were taken under color of state law and constituted a violation of VD's due process rights under the Fourteenth Amendment of the United States Constitution. As a result of this violation, VD is entitled to relief pursuant to 42 U.S.C. § 1983.

56.    Due process requires that deprivation of property be adjudicated, preceded by notice and a meaningful opportunity to be heard appropriate to the nature of the case.

57.    Due process requires that the PIAA provide students with the opportunity to be heard regarding rules, policies, and decisions which deprive them of their constitutionally protected property rights.

58.    The PIAA maintains a policy of making suspension decisions based on rules, standards, policies, and procedures that deprive students of any opportunity to challenge decisions or be heard.

59.    Students have no meaningful and legitimate ability to appeal the PIAA's deprivation of property rights.

60.    VD has been wrongfully denied an opportunity to be heard regarding his unsportsmanlike two game suspension, and specifically, VD is barred from protesting or bringing such appeal under the PIAA's Bylaws.

61.    VD has been wrongfully denied an opportunity to challenge his personal foul conduct penalty that has resulted in the PIAA's automatic two game suspension of VD's eligibility to participate in varsity football games.

62.    The PIAA's bylaws, policies, and rules, as written, failed to provide S VD with due process protections appropriate to the seriousness of the constitutionally guaranteed property rights that the PIAA oversees and regulates in its capacity as a quasi-state agency action under the color of state law.

63.    Therefore, Defendant PIAA's actions, interpretations, creation, and enforcement of the bylaws as well as policies supporting the bylaws constitute violations

of VD's due process rights under the Fourteenth Amendment to the

United States Constitution. As a result of these violations, VD is entitled to relief pursuant to 42 U.S.C. § 1983.

64.    The PIAA has acted with reckless indifference to VD's federally protected rights.

65.    VD is entitled to recovery of his costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

66.    As a direct and proximate cause of the action or inactions of the PIAA, VD has suffered significant social, emotional, and educational harm and has been damaged in an amount to be determined at trial.

67.    Plaintiff therefore requests and demands an order compelling the PIAA to allow VD to participate in varsity athletics, including the upcoming September 16, 2022 Football Game and subsequent games, an order providing that his due process rights be honored by having the subject call reviewed by a neutral after VD has been given full opportunity to present his position, and holding that he is entitled to monetary damages in an amount to be determined at trial.

### V.    Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Exercise jurisdiction over this action;

2.    Declare that students in Pennsylvania have a constitutionally

18

protected right to be eligible to participate in varsity athletics;

3.    Declare that VD's right to participate in varsity athletics, including the scheduled September 9, 2022, football game, was wrongfully taken away by the PIAA.

4.    Declare that the PIAA's Bylaws' lack of any appeal process as it relates to personal conduct two game suspension penalty and subsequent suspension violates due process.

5.    Declare that the PIAA did not afford VD with an adequate right to be heard, nor other basic protections required by the Constitution following its actions to suspend VD from varsity football and to prohibit him from playing in the September 9, 2022, football game.

6.    Award compensatory damages, including costs and attorneys' fees, for all counts alleged above.

7.    Provide permanent injunctive relief, preventing the PIAA from barring, suspending, or otherwise preventing VD from participating in varsity athletics at Carbondale Area until he is afforded his due process rights and granting immediate eligibility to VD to participate in varsity athletics for Carbondale Area, including the upcoming season scheduled football games.

8.    Provide such other and further relief as the Court deems just and equitable.

19

**Jury Trial Demanded.**

VD demands a trial by jury for all claims that may be so tried.

LAW OFFICE OF HARRY COLEMAN

Dated: September 5, 2022

Respectfully submitted,

LAW OFFICE OF HARRY T. COLEMAN

By: _____
   Harry T. Coleman, Esquire
   Attorney ID.: 49137
   41 N. Main Street
   3rd Floor, Suite 316
   Carbondale, PA  18407
   570-282-7440
   570-282-7606, fax
   Harry@HarryColemanLaw.Com

By: _____
   Owen M. Coleman, Esquire
   Attorney ID.: 327826
   41 N. Main Street
   3rd Floor, Suite 316
   Carbondale, PA  18407
   570-282-7440
   570-282-7606, fax
   Owen@HarryColemanLaw.Com

*Attorneys for Plaintiffs*